AMBROSE KUNDAR v. SHENANGO FURNACE COMPANY.
JOSEPH ROBETS v. SAME.[1]

July 26, 1907.

Nos. 15,253, 15,254—(204, 205).

**Negligence of Master.**

In a personal injury action, it is *held* that the evidence was sufficient
to justify the jury in finding that the injury of the plaintiffs was caused
by the negligence of the defendant in failing to exercise reasonable care
to employ a competent engineer.

Separate actions in the district court for St. Louis county to recover
$1,999.90 for personal injuries. The cases were tried together before
Cant, J., and a jury which rendered verdicts in favor of plaintiffs for
the sum demanded. From orders denying motions for judgment not-
withstanding the verdict or for a new trial, defendant appealed. Af-
firmed.

*E. C. Kennedy,* for appellant.

*L. H. Corcoran* and *Theo. Hollister,* for respondents.

ELLIOTT, J.

The actions brought by Ambrose Kundar and Joseph Robets against
the Shenango Furnace Company to recover damages for person-
al injuries alleged to have been occasioned by the negligence of
the company were tried together and separate verdicts returned in fa-
vor of the different plaintiffs. On appeal from an order denying de-
fendant's motions for judgment in favor of the defendant notwith-
standing the verdicts or for a new trial, the cases were argued and
submitted as one case.

There was evidence tending to establish the following facts: Kundar
and Robets were in the employ of the Shenango Furnace Company,
and were engaged in the work of sinking a shaft in connection with
mining operations. Robets had been a miner for about eight years,
and had worked for the company for about two years. Kundar had
been a miner for seven or eight years, and had worked for the defend-

[1]Reported in 112 N. W. 1012.

ant between one and two years. Both men had worked at the shaft in question for more than a month. This shaft which they were engaged in sinking at the time of the accident was twenty two feet long and eight feet wide. It was timbered with timbers twelve inches square. In this shaft was a ladder, which extended down to within a few feet of the bottom of the shaft, and as the shaft sank deeper the ladder was extended. The purpose of the ladder was to provide a method by which the men could enter and come out of the shaft. It had become customary, however, for the men, when going to and from their work in the shaft, to ride on the bucket, instead of using the ladder. This was done by the shift boss, the captain of the mine, and the master mechanic, as well as the men. The shift boss had absolute control of the men under him. The raising and the lowering of the bucket was controlled by a small engine, which was located some fifty feet from the mouth of the shaft. A system of signals had been arranged, by means of which the engineer in charge lowered and raised the bucket. On the morning of the accident the men gathered at the engine house and about the mouth of the shaft. The evidence tends to show that the engineer knew that the men intended to go down on the bucket, instead of the ladder. Instead of remaining where he could control the engine, he left it, without adjusting the frictions or brake in such a way as to hold the bucket at the surface, and when the men stepped on the bucket it fell rapidly to the bottom, and the respondents were seriously injured.

Several grounds of negligence are alleged in the complaint, but on the argument it was conceded that the only negligence relied on was the failure of the company to use proper care in employing a competent engineer. The court properly instructed the jury that it was the duty of the defendant to exercise ordinary care to employ such men only as were competent to perform the work at which they were engaged, in order that other servants should not be exposed to the perils arising from incompetent fellow servants, that the obligation on the part of the master is not to provide and employ men who will never be guilty of performing a negligent act, and that there is no duty on the part of the master to insure his employees against their fellow servants performing an occasional negligent act. There is a duty, however, to exercise ordinary care not to employ incompetent and unfit

men.  The instruction upon this point states the law accurately, and shows how the issue was submitted.  The court said:

> The first question, then, is:  Was the man Arans, who was in charge of the engine in question and which has been referred to in the evidence, an incompetent and unfit person to perform the services at which he was engaged?  This is to be determined by a consideration of all the evidence in the case having a bearing thereon, including a consideration of the character of the service, the necessity, if any, of a previous experience thereat, the length of experience, if any, which Arans had, and the character of the particular act or failure of his which it is alleged caused plaintiffs' injuries.  *  *  *  The particular negligence of Arans here relied on and alleged may or may not be of such a character as to indicate his competency or otherwise.  A particular act which in itself is negligent may indicate that it was performed by reason of incompetence on the part of the person so performing it, or it may be a mere fugitive act of negligence, performed by one who is possessed of all the necessary qualifications.  You are to say in this case whether Arans was competent—that is, fit—to perform the grade of services at which he was engaged, or whether he was not.

If Arans was not an incompetent and unfit person to do the work at which he was engaged, there can be no recovery on this ground.  If, however, he was an incompetent and unfit person, the next question is:  Was the defendant negligent in employing him or in retaining him in its employ?  You have heard all the evidence.  Defendant claims therefrom that, even if Arans was in fact an incompetent person, the defendant did all that could be required of it under the circumstances in making inquiries and in seeking to advise itself concerning his fitness to do what they wanted him to do.  Plaintiffs claim that what it did fell far short of what it should have done in this regard.  If, in fact, he was incompetent, and you so find, a presumption then arises that the defendant was negligent in employing him.  In this connection, also, you are advised that Arans, not having received a license under the laws of this state which would authorize him to have charge of the instru-

mentalities which he had in this case, a presumption arises that defendant was negligent in employing him to perform such work as that at which he was engaged. These presumptions operate in favor of the plaintiffs, and in support of the claims they make as to the negligence of the defendant in employing Arans; but such presumptions are not conclusive by any means, and you will say from all the evidence whether defendant was negligent in the respect here under consideration, or whether it was not. If, then, Arans was incompetent and unfit to operate the engine in question, and if you further find that defendant was negligent in employing him under the circumstances of this case, and if you find that plaintiffs' injuries were caused by the acts or failure of Arans arising from his unfitness or incompetency, the plaintiffs are entitled to recover, unless they were themselves negligent in such manner as contributed directly to cause their own injuries.

The engineer, Arans, was a young man between nineteen and twenty one years of age, and had been operating the hoisting engine for two or three weeks before the accident. Before he was hired by the company for this purpose he had had practically no experience in running an engine. He had been on the range some six months, and had been driving a delivery wagon. He had no license to run an engine, and had never applied for one or taken an examination. He was thus operating an engine in violation of the statute, and this in itself is evidence of negligence. The work, according to the evidence of the master mechanic, required an experienced engineer. There was ample evidence to justify the jury in finding that the company did not exercise reasonable care in employing a proper person to run this engine. The negligence upon which the respondents rely, and which the evidence sustains, was the negligence of the company. This being true, the immediate negligent acts of the shift boss, if any, become entirely immaterial. The cause of action is not the negligence of the engineer or the shift boss, and the question of fellow servant is not in the case.

Nor can the men be charged with contributory negligence in using the method of entering the shaft by the bucket, instead of the ladder which had been provided for their use. There was evidence tending

to show that it had become customary to use the bucket for this purpose, and that this custom was known to all who were in authority at the mine. On the occasion of the accident the shift boss, who had full authority over the men, directed them to enter the shaft by means of the bucket. The men were required to obey this order, and, if the danger was not so great and apparent that no reasonable man would assume it, they could do so without properly being charged with negligence. The question was at least one for the jury, and the jury determined it adversely to the appellant.

The other questions which have been so fully argued by the appellant seem immaterial, in view of the character of the specific negligence upon which the respondents rely. The assignments of error which go to the correctness of the instructions of the court and the refusal to give certain instructions have been carefully considered and found without substantial error.

The verdicts are not excessive, and the orders appealed from are therefore affirmed.